DIXON, Chief Justice.
Mascair and fifty-six others applied for employment with Jefferson Downs for the racing season beginning April 8, 1982. Many had worked for the company in previous seasons, some for ten or more previous seasons; most were employed by the New Orleans Fair Grounds between seasons at Jefferson Downs. The applicants were represented in contract negotiations by Local 328, Pari-Mutuel Clerk Union, as in previous years.
Prior to opening date Jefferson Downs installed new betting machines. It required all prospective employees to be trained and tested on this equipment, and it indicated that those applicants who did not perform satisfactorily would not be hired. Most if not all of the applicants were trained and tested. Some passed the test and some did not. Formal notification was not given. Applicants who inquired for results were told to report on opening day, with no positions assured.
Contract negotiations reached an impasse over wages. After picket lines were formed on April 8, 1982 Jefferson Downs proceeded immediately to hire other workers. Negotiations ceased and the season began as scheduled. The picket lines remained.
Mascair and his fellow applicants thereafter applied for unemployment benefits with the state Office of Employment Security. The agency denied benefits on the basis of R.S. 23:1601(4). It wrote to each applicant:
“You are unemployed as the result of a labor dispute. You are participating in/interested in the labor dispute in active progress at your place of employment. Therefore, benefits are denied for the duration of the labor dispute.”
This determination was affirmed in turn by the Appeals Referee, the Board of Review for the Office of Employment Security, the district court and the court of appeal. 484 So.2d 190 (La.App. 5th Cir.1986). Certiorari was granted. 486 So.2d 743 (La.1986).
In brief and in argument before this court the agency has suggested that its initial determination to deny benefits was erroneous. On the basis of Charbonnet v. Gerace, 457 So.2d 676 (La.1984), it now contends the labor dispute and resultant disqualification ended, in point of law, when Jefferson Downs filled the open positions with other workers and refused to engage in further negotiations. We reverse on other grounds.
R.S. 23:1601(4) provides that an applicant for unemployment benefits shall be disqualified:
“For any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment, or other premises at which he is or was last employed; but such disqualification shall not apply if it is shown to the satisfaction of the administrator that he is not participating in or interested in the *573 labor dispute which caused his unemployment. ...”
From the record it is clear that a labor dispute was in active progress at Jefferson Downs when the picket lines formed, and that the applicants were involved in that dispute. There is no reason to disturb this factual finding. The applicants were not, however, employed by Jefferson Downs during the dispute. Even those who successfully tested on the new machines had not been offered a position, and at the hearing Jefferson Downs was unable to show which workers, if any, would have been hired. Nor was agreement ever reached as to wages. To resolve this dispute it is thus necessary to determine whether the applicants were “last employed” by Jefferson Downs within the meaning of the statute.[1] We conclude that they were not.
The phrase “last employed” is common to the disqualification provisions of various state unemployment compensation laws. The history and interpretation of those laws (adopted by the state legislatures in 1937 and before) are discussed by Milton I. Shadur in “Unemployment Benefits and the ‘Labor Dispute’ Disqualification,” 17 U.Chi.L.Rev. 294 (1950). The state statutes were generally based on “Draft Bills” prepared and circulated by the Committee on Economic Security to assist the states in qualifying for the 90% rebate under the federal Social Security Act. See 55 Yale L.J. 21 (1946). The British Unemployment Insurance Act was the source of some provisions of the “Draft Bills.” For several underlying theories the various acts uniformly disqualified from benefits those workers whose unemployment was caused by their participation in a strike. That the government should be neutral in a labor dispute was the basis for the 1911 British Act. 17 U.Chi.L.Rev. 294, 297.
The words “at which he is or was last employed” were substituted in the “Draft Bills” for a “purge” provision in the British Acts, which removed the disqualification if the worker, unemployed by a strike, takes new employment. The disqualification was purged if the worker became “bona fide employed elsewhere, in the occupation which he usually follows, or has become regularly engaged in some other occupation.” The substitution of “is or was last employed” for the “purge” language of the British statute is said to evidence an intent to approve the “purge” doctrine. 17 U.Chi. L.Rev. 294, 315.
No question of “purge” exists in the case before us, and that doctrine is not applicable. We have only to decide whether the labor dispute was at an establishment where the worker “is or was last employed.” It was not. It was at an establishment at which the workers wished to become employed on certain terms. Employment was not offered these workers on any terms. Jefferson Downs opened on schedule. There was no work stoppage, in spite of the picket line.
Some workers might have been unemployed since the last racing season at Jefferson Downs — almost a year before these events. No explanation or authority has been cited to justify their disqualification because Jefferson Downs might have been their “last” employer in that sense. No purpose of the act would be furthered by reading the disqualification so broadly.
Because the applicants were not employed by Jefferson Downs at the time of the dispute, and were not last employed by Jefferson Downs at that time, disqualification was improperly assessed under § 1601(4). The judgment of the court of appeal is accordingly reversed, and the *574 case is remanded to the Board of Review for further proceedings.
COLE, J., concurs in the result.

. Throughout the administrative proceedings and in the lower courts the applicants have argued that interim employment at the New Orleans Fair Grounds, and elsewhere, renders § 1601(4) inapplicable. Jefferson Downs has maintained the contrary, and the court of appeal agreed with Jefferson Downs. It said: "We know of no jurisprudence, and no authority was cited by appellants, for the contention that seasonal employees can be excluded from disqualification because of the so-called ‘last employee’ (sic) language of R.S. 23:1601(4)." 484 So.2d at 192.